UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AKOV ORTIZ, | : | |
| Plaintiff, | : | CASE NUMBER: 3:02CV1369 (JCH)(HBF) |
| | : | |
| v. | : | |
| | : | |
| J.BRYMER, IN HIS OFFICIAL | : | |
| CAPACITY AS CHIEF OF POLICE | : | |
| FOR MIDDLETOWN, CT AND IN HIS | : | |
| INDIVIDUAL CAPACITY, POLICE | : | |
| YEPES IN HIS INDIVIDUAL | : | |
| CAPACITYAND IN HIS | : | |
| OFFICIALCAPACITY AS POLICE | : | |
| OFFICER FOR MIDDLETOWN, CT, | : | |
| | : | |
| Defendants. | : | MARCH 25, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

The defendants, J. Edward Brymer and Jorge Yepes, hereby submit the following

Memorandum of Law in Support of their Motion for Summary Judgment.  The defendants

are entitled to judgment as a matter of law because the undisputed material facts show that

the defendant, Jorge Yepes, did not shoot the plaintiff. Further, the defendant, Yepes, is

entitled to qualified immunity because his conduct was objectively reasonable under the

circumstances given that the plaintiff had just shot two Middletown Police detectives and

was struggling while being placed under arrest.

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

Further, since there can be no finding that defendant, Yepes, violated the plaintiff's constitutional rights, the plaintiff's claims against defendant, Brymer, Chief of Police, must also fail.

I.    **STATEMENT OF FACTS**

This matter arises out of an incident occurring on the night of August 10th and 11th, 1999, at which time the Middletown Police Department was attempting to serve the plaintiff, Akov Ortiz, with a domestic violence felony arrest warrant which resulted in the plaintiff shooting two Middletown Police detectives.

According to the plaintiff's complaint, he had arranged to meet his ex-girlfriend at the playground at Wesley Elementary School in Middletown, Connecticut. (Amended Complaint dated April 3, 2003, p. 1, ¶ 2.) The plaintiff alleges that he was initially "attacked" by two police officers other than defendant, Yepes. (*Id.*, p. 1, ¶ 3.) The plaintiff further alleges that he was forced to the prone position by the defendant, Yepes, who never identified himself. (*Id.*, p. 1, ¶ 4.) It is further alleged that defendant, Yepes, discharged his firearm striking the back of the plaintiff's leg. (*Id.,* p. 2.) The plaintiff further alleges that the defendant, Yepes, then jumped on the plaintiff's back driving his knee with extreme force into the plaintiff's back and then drove the barrel of his firearm with extreme force into the side of the plaintiff's head, pinning the plaintiff's head to the ground and threatening to kill

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

the plaintiff. (*Id.*)  It is further alleged that the defendant, Yepes, began to strike the plaintiff with the butt of his firearm around the face and head, leaving abrasions.  (*Id.*)

The plaintiff, Akov Ortiz, alleges that the alleged conduct of defendant, Yepes, violated the plaintiff's civil right to be free from cruel and unusual punishment.  (Amended Complaint.)  With respect to defendant, Brymer, Police Chief for the City of Middletown, the plaintiff alleges that he failed to properly train and supervise defendant, Yepes, in the use of a firearm, the use of force and proper arrest procedures.  (*Id.*)  The plaintiff alleges that such failure was a direct and proximate cause of the violation of his civil rights. (*Id.*)

On the night of August 10th and 11th, 1999 the Middletown Police Department had an outstanding felony domestic violence arrest warrant for the plaintiff, Akov Ortiz.  (Aff. of Yepes, ¶ 5, Exhibit A;  Middletown Police Report Sworn Statement of Detective Mefferd, Exhibit B.)  The Middletown Police Department received information that the plaintiff, Akov Ortiz, was going to be at the Wesley Elementary School on August 11, 1999 at approximately 1:00 a.m.  (Aff. of Yepes, ¶ 6, Detective Augeri trial testimony given on October 4, 2001 in *State v. Ortiz* Tr., p. 28,  Exhibit C; and Middletown Police Report Sworn Statement of Detective Mefferd.)  At that date and time, the defendant, Yepes, was a member of the Middletown Police Department assigned to the Street Crime Unit.  (Aff. of

Yepes, ¶ 4 and Jorge Yepes trial testimony given on October 5, 2004 in *State v. Ortiz*, Tr., p. 2, Exhibit D.)

Just after midnight on August 11, 1999 defendant, Yepes, along with the other Middletown Police Officers arrived at the Wesley Elementary School to get set up to apprehend the plaintiff and serve him with the outstanding arrest warrant (Middletown Police Report Sworn Statement of defendant, Yepes,  Exhibit E.)  It was the defendant, Yepes', responsibility to cover the wooded area while Detective Augeri and Detective Warner were responsible for apprehending the plaintiff as he walked off the bridge.  (Aff. of Yepes, ¶¶ 7 and 8; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., p. 6, Exhibit F; Middletown Police Report Sworn Statement of Jorge Yepes.)

After having observed the plaintiff, Akov Ortiz, walk over the bridge and through to the field, defendant, Yepes, heard Detectives Augeri and Warner yelling, "Police, get down" in a loud tone of voice.  (Aff. of Yepes ¶¶ 9 and 10; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 15-16, Exhibit G.)  Defendant, Yepes, started to run toward the bridge.  (Aff. of Yepes, ¶ 9; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 15-16,  Exhibit G.) As defendant, Yepes, started across the bridge, he heard gunshots (Aff. of Yepes, ¶ 9; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 15-16, Exhibit G.)  Defendant, Yepes, heard five to seven

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

shots, the first of which were small popping sounds and the last a loud boom.  (Aff. of Yepes, ¶ 12; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., p. 17, Exhibit G.)  As defendant, Yepes, got to the side of the bridge he had his handgun in his right hand and his flashlight in his left.  (Aff. of Yepes, ¶¶ 13-14; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., p. 17, Exhibit G.)

As defendant, Yepes, got to the field, he heard both Detective Augeri and Detective Warner yelling for help and that they had been shot.  (Aff. of Yepes, ¶ 15; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., p. 18, Exhibit G.)  The Detectives had fallen to the ground and the defendant, Yepes, realized that the plaintiff was still on the field.  (Aff. of Yepes, ¶ 16; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., p. 18, Exhibit G.)  The plaintiff, Akov Ortiz, was kneeling and facing towards defendant, Yepes,.  (Aff. of Yepes, ¶ 17; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., p. 19, Exhibit G.)  All gunfire had stopped.  (Aff. of Yepes, ¶ 36.)

At that point, defendant, Yepes, yelled "Police, keep your hands in the air and don't move."  (Aff. of Yepes, ¶ 19; Middletown Police Report Sworn Statement of Jorge Yepes.) The defendant, Yepes, went around behind the plaintiff and after checking to make sure that the plaintiff had no weapon at his side, he dropped one knee to the back of the plaintiff and holstered his weapon. (Aff. of Yepes, ¶¶ 21-23; Middletown Police Report Sworn

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

Statement of Jorge Yepes.)  At that point the plaintiff, Akov Ortiz, started to move around as if he wanted to get up and the defendant, Jorge Yepes, had to struggle with him.  (Aff. of Yepes, ¶¶ 24-25; Middletown Police Report Sworn Statement of Jorge Yepes.)  The defendant was finally able to handcuff Mr. Ortiz. (Aff. of Yepes, ¶ 26.)  As the defendant patted down the plaintiff, he noticed that the plaintiff had been shot in the leg. (Aff. of Yepes, ¶ 28; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 22-23, Exhibit H.)

The defendant, Yepes, did not discharge his weapon and did not shoot the plaintiff, Akov Ortiz.  (Aff. of Yepes, ¶¶ 29-30; Internal Affairs Investigation Report,  Exhibit I.)  It was Detective Warner who fired his gun at the plaintiff, Akov Ortiz.  (Warner trial testimony given on October 9, 2001 in *State v. Ortiz*, Tr., p. 167, Exhibit J; Internal Affairs Investigation Report.)

In addition, the defendant, Yepes, did not drive the butt of his weapon into the side of the plaintiff's head or threaten to kill him and he did not use his weapon to strike the plaintiff in either the face or the head. (Aff. of Yepes, ¶¶ 32-34.)  Also, the defendant, Yepes, did not drive his knee into the plaintiff's back with extreme force, but instead he used what force as was necessary to place Mr. Ortiz under arrest. (Aff. of Yepes, ¶¶ 31 and 35.)

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

## II.   LEGAL ARGUMENT

### A.   Standard for Summary Judgment.

A motion for summary judgment should be granted if the court determines based on the pleadings, affidavits and other proof that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The burden of showing that there is no genuine issue of fact in dispute rests with the moving party.  *Carlton v. Mystic Transport, Inc.* 202 F.3d 129, 133 (2d Cir. 2000), citing, *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1223 (2d. Cir. 1994).

Once the moving party has met its burden in order to defeat the motion, the non-moving party must, "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).  Further, a party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. "  *Lipton v. The Nature Company*, 71 F.3d 464, 469 (2d Cir. 1995), quoting, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  Also, a party may not rest on the allegations or denials contained in his pleadings.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251-52 (1986).

**B.    The Undisputed Material Facts Show that the Allegations Upon Which the Plaintiff Relies are False.**

The documentary evidence submitted with this motion establishes that the plaintiff's allegations are illusory and not based in fact.  Accordingly, no violation of the plaintiff's civil rights could have occurred.

As indicated by the defendant's affidavit, his own sworn testimony in the plaintiff's criminal trial and the other attached exhibits, the defendant was part of a Middletown Police Department operation to serve a felony arrest warrant on the plaintiff on the night of August 10th and 11th, 1999.  While the Middletown Police Department tried to apprehend the plaintiff and serve the arrest warrant, he shot two Middletown Police detectives.  (Aff. of Yepes, ¶ 15, Exhibit A; Internal Affairs Investigation Report, Exhibit I.)  As evidenced by the attached exhibits, defendant, Yepes, came to the location where the Middletown detectives had been shot after all gunfire had ended to find that the plaintiff was still in the area.  (Aff. of Yepes ¶ ¶ 16 and 36; Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz* 2001, Tr. p. 18, Exhibit G.)  At that point, it became the defendant's obligation to apprehend the plaintiff. The defendant did not know where the plaintiff's weapon was and

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

therefore, had to proceed with extreme caution.  Accordingly, the defendant, Yepes, yelled "Police, keep your hands in the air and don't move."  (Aff. of Yepes, ¶ 19; Middletown Police Report Sworn Statement of defendant, Yepes,  Exhibit E.)  Still not knowing where the weapon used by the plaintiff, Akov Ortiz, to shoot the Middletown detectives was, the defendant went behind the plaintiff to be sure that there was not a weapon at his side.  (Aff. of Yepes, ¶ 21; Middletown Police Report Sworn Statement of defendant, Yepes.)  As the defendant had both a flashlight and a weapon in his hands, defendant, Yepes, dropped one knee to the back of the plaintiff.  (Aff. of Yepes, ¶¶ 22 and 23; Middletown Police Report Sworn Statement of defendant, Yepes.)  At this point, the plaintiff started to move around as though he wanted to get up and the defendant had to struggle with him.  (Aff. of Yepes, ¶¶ 24 and 25; Middletown Police Report Sworn Statement of defendant, Yepes; Jorge Yepe's trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 22-23, Exhibit H.) The defendant, Yepes, was finally able to place handcuffs on the plaintiff and was patting him down when he noticed that the plaintiff had been shot.  (Aff. of Yepes, ¶¶ 26 and 28; Jorge Yepe's trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 22-23, Exhibit H.)

Based on the testimony in the criminal matter arising out of this incident, the affidavit of Jorge Yepes and the police investigation, it is clear that defendant, Yepes, did not shoot

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**

15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

the plaintiff nor did he engage in the other conduct as alleged by the plaintiff. All of the gunshots had ceased by the time defendant, Yepes, made it to the area where Detective Augeri and Detective Warner and the plaintiff were.  (Aff. of Yepes, ¶ 36.)  Second, when the defendant, Yepes, arrived at this area, the plaintiff, Akov Ortiz, was kneeling, making it more likely than not that he had already been shot. Third, Detective Warner testified under oath in the plaintiff's criminal trial that he was the one who discharged his weapon at the plaintiff. (Warner trial testimony given on October 9, 2001 in *State v. Ortiz*, Tr., P. 167, Exhibit J.)  Fourth, the Internal Affairs investigation confirms that it Detective Warner's weapon that fired a shot and not the weapon of the defendant.  (Internal Affairs Investigation Report, Exhibit I.)

 With respect to the plaintiff's other allegations that the defendant drove his knee into the back of the plaintiff with extreme force, that he used his weapon to hit the plaintiff in the face and head and that he threatened to kill the plaintiff, all such allegations are denied by the attached affidavit of the defendant.  Further, there is nothing in the record of this incident to support that any injuries were sustained by the plaintiff that would be consistent with such actions.

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

Accordingly, based on the supporting documentation, the defendant, Yepes, did not shoot the plaintiff, nor did he engage in any of the other conduct as alleged.  Thus, summary judgment should enter in favor of the defendants.

### C.    Any Conduct In Which the Defendant Did Engage, is Protected By the Doctrine of Qualified Immunity.

Notwithstanding the above argument as indicated in his affidavit, the defendant concedes that he did place his knee on the plaintiff's back.  However, such conduct would be protected by the doctrine of qualified immunity.

The doctrine of qualified immunity shields government employees from liabilities for civil damages as a result of the performance of discretionary functions and serves to protect government employees from the burdens of costly insubstantial lawsuits.  *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  A government actor's discretionary functions are shielded from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995), quoting, *Harlow v. Fitzgerald*, 457 U.S. at 818.  The government actor will be protected if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**

15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

Accordingly, in order to be entitled to summary judgment based on qualified immunity, the undisputed facts must show either that an officer's conduct did not violate clearly established rights of which a reasonable person would have known or that it was objectively reasonable to believe that the officer's acts did not violate these clearly established rights.  *Soares v. State of Connecticut*, 8 F.3d 917, 920, (2d Cir. 1993), quoting, *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990).  Further, a court must examine the facts and circumstances of each particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and, whether he is actively resisting arrest or attempting to evade arrest by flight. *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996), citing, *Graham v. Connor*, 490 U.S. 386, 396 (1987).

"Because the defense of qualified immunity is designed to relieve governmental officials of the burden of litigation as well as the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by such immunity." *In re: State Police Litigation*, 88 F.3d 111, 123 (2d Cir. 1996); *see, also Harlow*, 457 U.S. at 818; *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d. Cir. 1993); *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992); *Kaminski v. Rosenblum*, 929, F.2d 922, 925 (2d Cir. 1991); *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).

In the present case, the only conduct that the defendant, Yepes, concedes occurred that is also alleged in the complaint is that he placed his knee on the plaintiff's back. However, it is strongly disputed that it was done with extreme force.  As indicated by the attached exhibits, when the defendant came upon the plaintiff he had his flashlight in one hand and his weapon in the other.  It was dark out at the time and he did not know where the plaintiff's weapon was.  Therefore, prior to either holstering his weapon or placing his flashlight down, defendant, Yepes, first needed to make sure that he had the plaintiff under some sort of control.  Accordingly, placing his knee on his back while he was in the prone position was necessary in order to effectuate arrest.  Furthermore, it was the plaintiff who began to move around and struggle as though he wanted to get up and flee the scene. (Aff. of Yepes, ¶¶ 24-25; Middletown Police Report Sworn Statement of defendant, Yepes, Exhibit E;  Jorge Yepe's trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., pp. 22-23, Exhibit H.) Given that the plaintiff had just shot two Middletown Police detectives and also struggled while being placed in custody, the actions of defendant, Yepes, were objectively reasonable under the circumstances.  Further, they were necessary to protect the other officers and prevent the plaintiff from fleeing.

Therefore, the defendant is entitled to qualified immunity with respect to the plaintiff's excessive force claim and summary judgment should be granted in favor of the defendant.

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

**D.     Claims For Failure to Train and Failure to Supervise.**

The plaintiff's claims against defendant, Chief of Police J. Edward Brymer, for failure to train and supervise are further subject to summary judgment because there can be no finding that defendant, Yepes, violated the plaintiff's constitutional rights.  Therefore, summary judgment should also be entered as to defendant, J. Edward Brymer, on this basis.

The law is clear that there cannot be an award of damages against a municipal corporation or its police chief based on the actions of one of its officers where it has been concluded that the officer has not inflicted constitutional harm.  *Los Angeles v. Heller*, 475 U.S. 796, 799 (1985), citing, *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Accordingly, were the Connecticut District Court entered summary judgment for a sergeant in the Bloomfield Police Department finding that he had not violated the plaintiff's Fourth Amendment Rights, it also granted summary judgment for the Town of Bloomfield and its Police Chief on claims of failure to train and failure to supervise.  *Tyson v. Willauer*, 2003 WL 22519876 (D. Conn. 2003), (Exhibit K).

Since defendant, Yepes, has not violated the plaintiff's constitutional rights, summary judgment should also enter as to the defendant, J. Edward Brymer.

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**

15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

## III.    CONCLUSION

Based on the attached exhibits, there is no dispute as to the material facts that defendant, Yepes, did not shoot the plaintiff. Furthermore, he did not drive his knee into the back of the plaintiff with extreme force or use his weapon to hit the plaintiff in the head or face.  In addition, he did not threaten to kill the plaintiff.

Moreover, to the extent that the defendant did use his knee to subdue the plaintiff in order to place him under arrest and to secure him after he had shot and wounded two Middletown Police detectives, defendant, Yepes, is as a matter of law entitled to qualified immunity with respect to that conduct.

In addition, because defendant, Yepes, did not violate the constitutional rights of the plaintiff and is entitled to summary judgment, the plaintiff cannot prevail or continue his claims against the defendant, J. Edward Brymer, and summary judgment should be entered with respect to defendant, Brymer, as well.

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

Accordingly, the defendants respectfully request that the court grant this motion for summary judgment.

Defendants,
J. Edward Brymer and Yepes

BY:_____
    Andrew M. Dewey
    Baio & Associates, P.C.
    15 Elm Street
    Rocky Hill, CT 06067
    Tel.: (860) 571-8880
    Fax: (860) 571-8853
    adewey@baiolaw.com
    Federal Bar No. ct07152
    Their Attorney

### **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this ___ day of March, 2004 to the pro se plaintiff as follows:

Akov Ortiz, Prisoner 262585
Northern Correctional Institution
287 Bilton Road, P.O. Box 665
Somers, CT 06071- 0665

_____
Andrew M. Dewey

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

TABLE OF EXHIBITS

**Aff. of Yepes, ¶ 15, Exhibit A**, 9
**Aff. of Yepes, ¶ 5, Exhibit A**, *3*
**Detective Augeri trial testimony given on October 4, 2001 in *State v. Ortiz* Tr., P. 28,  Exhibit C**, *3*
**Internal Affairs Investigation Report,  Exhibit I**, 7
**Internal Affairs Investigation Report, Exhibit I**, 9, 11
**Jorge Yepe's trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., P. 6, Exhibit F**, 4
**Jorge Yepe's trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., Pp. 22-23, Exhibit G**, 11
**Jorge Yepe's trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., Pp. 22-23, Exhibit H**, 10, 14
**Jorge Yepes trial testimony given on October 5, 2001 in State v. Ortiz 2001, Tr. P. 18, Exhibit G**, 9
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., P. 17, Exhibit G**, 5
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., P. 17, Exhibit G.**, 5
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., P. 18, Exhibit G.**, 5
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., P. 18, Exhibit I**, 6
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., P. 19, Exhibit G**, 6
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., Pp. 15-16,  Exhibit G**, 5
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., Pp. 15-16, Exhibit G**, 4, 5
**Jorge Yepes trial testimony given on October 5, 2001 in *State v. Ortiz*, Tr., Pp. 22-23, Exhibit H**, 7
**Jorge Yepes trial testimony given on October 5, 2004 in *State v. Ortiz*, Tr., P. 2, Exhibit D**, 4
**Middletown Police Report Sworn Statement of defendant, Yepes,  Exhibit E**, 4, 10
**Middletown Police Report Sworn Statement of Detective Mefferd,  Exhibit B**, *3*
***Tyson v. Willauer*, 2003 WL 22519876 (D. Conn. 2003), (Exhibit K).**, 16
**Warner trial testimony given on October 9, 2001 in *State v. Ortiz*, Tr., P. 167, Exhibit J**, 7
**Warner trial testimony given on October 9, 2001 in *State v. Ortiz*, Tr., P. 167, Exhibit J.**, 11

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**

15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580