Exhibit A

```
DOCKET NO. CR9-151223          :   SUPERIOR COURT
           CR9-151946

STATE OF CONNECTICUT           :   JUDICIAL DISTRICT OF MIDDLESEX

VS.                            :   AT MIDDLETOWN, CONNECTICUT

AKOV ORTIZ                     :   SEPTEMBER 7, 2001
```

B E F O R E:

        HONORABLE PATRICK J. CLIFFORD, JUDGE

A p p e a r a n c e s:

   For the State:

      Timothy Liston, Esq.
      State's Attorney's Office
      One Court Street
      Middletown, CT 06457

   For the Defendant:

      Norman Pattis, Esq.
      51 Elm Street
      Suite 409
      New Haven, CT 06510

      James Nugent, Esq.
      236 Boston Post Road
      Orange, CT 06477

                               Pamela Gendreau
                               Court Recording Monitor
                               One Court Street
                               Middletown, CT  06457

```
 1            MR. PATTIS:  We have no witnesses, Judge.
 2            THE COURT:  All right.  I assume we'll have argument
 3   Take a recess and then have argument.  All right.  Recess
 4            (Whereupon the Court stood in morning recess).
 5            THE COURT:  Well, we have a number of motions.  I
 6   guess the first motion we should probably deal with is the
 7   motion for joinder.  Now, that's the State's filed a
 8   motion for joinder.  So the State, I guess, should argue
 9   first on that.
10            MR. LISTON:  Well, it's the State's position, Your
11   Honor, that it would serve judicial economy if the four
12   cases were tried together.  There is an inter-relationship
13   between the cases and I think that evidence of each one
14   would be admissible at the trial of any one of them.
15            Starting with the initial, at least in time, the
16   burglary of the Durinick residence that got everything
17   started.  Mr. Ortiz accused of breaking in there, stealing
18   firearms and the subsequent police investigation.
19   Detectives interview Louis Labbadia.  Louis Labbadia gives
20   the police information of Mr. Ortiz as having been
21   involved in the burglary and what Mr. Ortiz's plans were
22   for using the weapons.  And that information is utilized
23   by the police to secure Mr. Ortiz's arrest.
24            Mr. Ortiz becomes aware that Mr. Labbadia has given
25   information to the police and that forms a basis of a
26   motive to get rid of Mr. Labbadia when the case is coming
27   up for trial here in G.A. 9.  So the, insofar as the
```

burglary, that provides the starting point and also provides the motive for the murder of Louis Labbadia.

And the defendant made statements to, I think it was the -- well, in the defendant's statements, he tells the police that he got Mr. Labbadia because Mr. Labbadia had spoken to the police.

The other admissions that the defendant makes to his, then I think it was his ex-girlfriend, Kristin Quinn, he makes admissions to her about the Labbadia murder. Also makes admissions to her about the Durinick burglary during the course of conversations with her. And one of those conversations is the incident where the defendant is allegedly holding her at gunpoint, telling her about the murder. Also telling her he'll kill her and burn down, I believe, her grandparents' house if she reveals this information to the police.

So in the context of explaining the incident and charges against Ms. Quinn, the discussions about the murder are going to come up. The discussions about the burglary are going to come up. In the course of the evidence about the burglary case, the admissions he made to Ms. Quinn while she was being held at gunpoint would also be admissible. In the trial of the murder case, the admissions he made to Ms. Quinn about the Labbadia murder would be relevant. And so the jury would hear the circumstances under which all of those various statements were made and how they're inter-related with each other.

1    The police then get a warrant for Mr. Ortiz's arrest
2    for the incident involving the threatening of Ms. Quinn
3    and Ms. Quinn is the one who tells the police about Mr.
4    Ortiz going to meet her out at Wesley School. So
5    obviously, that would be a predicate why she's meeting
6    with Mr. Ortiz, why the police are looking for Mr. Ortiz
7    involves the incident with Ms. Quinn.
8        When Mr. Ortiz comes across the bridge and the
9    officers yell, Police, get down, he doesn't know whether
10   this is for the Quinn warrant, whether it's for the
11   Labbadia murder, whether it's for the Durinick murder
12   (sic). The police don't get that far when he turns around
13   and fires at them.
14       But certainly, Mr. Ortiz's motive in shooting the
15   police would be to elude capture, escape custody for any
16   one of the crimes that he was aware of that the police
17   were looking at him for. He was aware by that time in
18   August of '99 that they were looking at him for the
19   homicide case. He was aware that they had the tape that
20   he had thrown off the bridge. He was probably aware that
21   they had spoken to Ms. Quinn.
22       So when the police were going to take him into
23   custody, what the charge was, it could have been any one
24   of them, that causes him now to fire at the police in an
25   attempt to get away. Which is relevant insofar as the
26   other cases since in the Labbadia case, he murdered a
27   witness to get away from a burglary. So it all would be

relevant as to the continuing course of conduct of Mr. Ortiz in attempting to elude prosecution for various offenses.

Also the events after the shooting, insofar as the sequence of the statements, since there's an oral statement about the murder. Then there's a written statement about the shooting of the police. And then there's an oral statement about the murder. That sequence of events and what's going on at the hospital would all be relevant at the trial of any one of those cases, perhaps, to allow the jury to understand the circumstances under which each and all of the statements have been giving. If there's a claim that one was involuntary, well the significance of a later statement or advisements and waivers would be relevant.

So this inter-relationship, I think, puts the case in a situation where the jury would be allowed to hear about all the cases at the trial of any one of them. And that the jury should be allowed to consider the whole picture of incidents that Mr. Ortiz was involved in. We have a burglary. Then we had him killing the witness, the Labbadia case. We him confessing and threatening another witness, the Quinn case. Then we have him shooting the police officers when they're trying to serve a warrant for threatening Ms. Quinn and, perhaps, in his mind trying to take him into custody for the Labbadia murder.

Now, I realize that there's a multitude of charges

that we couldn't, probably, present everything in a box. One case, because there is this inter-relationship and overlapping, but I think that the jury would be able to follow the evidence and the Court would be able to provide the jury with sufficient instructions, albeit it would be a very long instruction to the jury since there are multiple counts. But I think the jury could carefully evaluate each one of the crimes, evaluate the overlapping and interconnecting evidence and be able to give the defendant a fair trial.

THE COURT: Thank you. Defense?

MR. PATTIS: I feel sort of like Medusa, Judge. The State keeps trying, in this instance, to cut off the head of my client and more charges keep sprouting. Today we got four more. God knows what tomorrow will bring. But I guess it's Saturday, so probably nothing. Well, the Part Bs too.

I don't think consolidation is appropriate under State versus Boscarino. Certainly, Mr. Ortiz is one young man, one man child, a twenty year old, just barely into adulthood on trial here for a bunch of stuff. And it all did start with a burglary and it did result in the death, although we will say to whatever fact finder we appear before, by self-defense, the killing of Louis Labbadia.

Something happened with Kristin Quinn, whether it was the sort of hysterical overreaction of a former lover or not will be for a fact finder to determine.

1    And then Mr. Ortiz was ambushed one night in the dead
2    of night by men he had no reason to know were police
3    officers and he did, what I think a fact finder may well
4    conclude, as reasonable. He sought to defend himself.
5    However, what the State's charged is attempted murder
6    of a police officer and those charges are about as serious
7    as it gets. Had it been an accomplished murder, it would
8    be a capitol felony and the State would have undoubtedly
9    seek to take Mr. Ortiz's life. And I think that charge
10   and the penalty to which its attached goes to what I think
11   most people would regard as the brutal and shocking
12   character of an attempt to murder a police officer.
13   It comes later in time. I don't know that it is
14   factually related to the burglary except on a theory of
15   the State's case as it speculates about motive. I don't
16   know that the murder of a police officer is factually
17   related to the proof of the Kristen Quinn case, except as
18   the State speculates about motive. I don't know that the
19   attempted murder of a police officer bears any relation to
20   Louis Labbadia, except as the State speculates about
21   motive.
22   In the attempted murder of a police officer case, the
23   State may seek to introduce evidence of these other crimes
24   as some exception, you know, to any of a number of
25   different rules and the Court may well have to conclude at
26   that point whether it's admissible or whether it's more
27   prejudicial than probative. I don't believe that's a slam

1  dunk issue for the case. I think that's a question by
2  question, event by event thing that would have to be
3  determined in the attempted murder of a police officer
4  case.
5      At this point, you know, as we stand here, I've got
6  hundreds of police reports and I can imagine many
7  different uses to which they're put. It's a fundamentally
8  different trial for Mr. Ortiz if we are looking at all of
9  the thirty some counts, if that's what we're up to, twenty
10 eight or whatever, that the State has put on. And there
11 is a substantial danger that Mr. Ortiz's right to a fair
12 trial will be undermined because of the cumulative weight
13 of it.
14     The code of evidence, our law recognizes that there
15 is no such thing as character evidence. Clearly, you
16 can't put on evidence that a person is of sufficiently bad
17 character that he must have done the crime alleged. We
18 have what we believe is a very defendable, probably
19 winnable, perhaps wining case as against the police
20 officers. And I think that case goes south if the State's
21 permitted to put on substantive evidence of all these
22 other crimes.
23     State versus Boscarino makes it clear that, as does
24 the other cases, but in our courts, that it's within your
25 discretion to consolidate. But I don't see anywhere what
26 the State suggests and what the State began by arguing
27 that the Bill of Rights gets swallowed by judicial

1    economy. The State's a legal fiction, Judge, it's going
2    to be here long after we're dead. It exists and lasts in
3    perpetuity or at least until the next revolution.
4         Mr. Ortiz has rights that are fundamental under our
5    Constitution. Judicial economy is not a factor here.
6    There is a substantial danger of prejudice to Mr. Ortiz
7    and we would ask that the Court sever the attempted murder
8    of a police officer charge from the other counts.
9         As to the other counts, that is the murder of Mr.
10   Labbadia, I'd be hard pressed to argue that the burglary
11   charge should be severed from that, you know, because Mr.
12   Labbadia was the principle witness, the timing of his
13   disappearance is temporally related to the burglary case.
14   And there are issues there that I can't argue with the
15   same degree of force.
16        I rely on the brutal and shocking nature of the
17   accusations with regard to attempted murder of a police
18   officer to contend that if that case is tried with the
19   other three, Mr. Ortiz won't get a fair trial as to other
20   three.
21        THE COURT: Thank you. Well, joinder is actually, in
22   looking at the cases and being familiar with it before I
23   even looked at the cases, joinder is actually favored and
24   it is authorized by Statute and Practice Book rule and it
25   is discretionary. One of the main reasons, purposes is
26   judicial economy, obviously.
27        The cases seem to fall into two general categories,

1    those that are factually similar but legally unrelated and
2    those in which one would be admissible legally in the
3    trial of another. There are factors for the Court to
4    balance according to Boscarino and other cases.

5    Do the cases that the State is seeking to join, do
6    they involve discreet, easily distinguishable factual
7    scenarios? Two, are the crimes of a violent nature or
8    brutal or shocking conduct? Three, the duration or
9    complexity?

10   If the cases are cross-admissible, in other words, if
11   one was tried alone, for example the murder, yet evidence
12   of the burglary would come in on that case, then obviously
13   there's less prejudice to the defendant. There would be
14   curative instructions. When you're dealing with cases
15   such as some of these here, the sequence of events and
16   their interrelated facts, the brutal and shocking is a
17   difficult area. One of the cases I saw, two totally
18   unrelated murders were allowed to be joined. I know
19   Boscarino did not allow four sexual assaults to be joined
20   or found error in that. But a lot of the cases seemed to
21   indicate the Court's inclination to find some of the
22   sexual assaults more brutal and shocking, actually, than
23   murder and what I would call regular assaults.

24   In looking at all of the cases and the theories to
25   it, the murder case, the burglary case, the case that
26   involves Ms. Quinn, which I guess is the threatening,
27   kidnapping and other charges, certainly those seem to be

1  all interrelated and cross-admissible if they were tried
2  separately. Obviously, the State's theory is that the
3  murder of the victim here, the motive was because of the
4  original burglary in 1997. It's the State's claim that
5  the defendant killed the victim because he gave some
6  statement in that burglary. The case concerning Ms. Quinn
7  with the threatening, kidnapping two, gun charges, I
8  believe, apparently if she testifies to admissions the
9  defendant made to her concerning the burglary and/or the
10 murder, it occurred during the course of those crimes that
11 she alleges occurred.
12    So it's all going to come out in front of the jury
13 and I think those are -- they're not complex. I don't
14 think there's a duration problem. I don't think the facts
15 are so brutal or shocking and I do think they're cross-
16 admissible. So I do believe that those three cases should
17 be and I will order that those are joined.
18    I have been concerned from the outset on the joinder
19 issue concerning the, what I would term, the police
20 shooting incident of August 11th of 1999. It's a totally
21 different case. The only way it would be admissible is
22 under the State's theory of some motive or potentially
23 consciousness of guilt. In that, someone is evidencing
24 their guilty state of mind by an armed resistance to the
25 police. He was not being arrested, of course, that day
26 for the murder. He had been interviewed apparently a
27 number of times already concerning that murder. He was

1    actually going to be served with a warrant from an
2    incident, I believe, on August 7th, some four days earlier
3    that involved Ms. Quinn. There's no evidence that he knew
4    what he was going to be arrested for, even if he knew he
5    was going to be arrested. It was kind of a quick moving
6    situation from the facts as I know them.
7        I don't know if in the murder case or the other three
8    cases, if they were tried, whether evidence of that police
9    shooting would be admissible on a consciousness of guilt.
10   I think the State or the Court would have to do some
11   weighing of the probative and prejudicial value. It is a
12   brutal and shocking -- or brutal and shocking allegation
13   that I have heard. It obviously changes the duration of
14   the trial. I think it lengthens the case. I think the
15   jurors may struggle to keep them actually separate when
16   they are not necessarily legally cross-admissible.
17       Also now that I've heard on the motion and I was
18   concerned as to whether any statement that the defendant
19   gave, if the statement involved him discussing both the
20   police shooting and the alleged murder, but now that I
21   have the heard the preliminary motion, they were separate
22   statements that were taken. So there's no redacting that
23   has to be done.
24       Things might occur during the course of whatever
25   trial goes forward. If it is the murder case and the
26   burglary case and the threatening and kidnapping,
27   certainly things may arise during the course of that trial

1   or doors may be opened that may allow some evidence in
2   concerning that police shooting. But that is something
3   that the Court must take as it comes based on the
4   evidentiary rulings. But I am not going to join that case
5   with the other three.
6       So that is the Court's ruling in regards to the
7   joinder.
8       Now, of course, I guess the State's option then at
9   that point is to decide which case is going to go forward.
10  We have the murder, the burglary, and the
11  threatening/kidnapping/the Quinn matter, which must be
12  tried separately from the attempted murder, assault on
13  police officer case of August 11th.
14      Has the State made a decision on that or is that
15  going to wait until we see what happens, because I am,
16  obviously, prepared after argument to rule on the other
17  motions also. I don't know whether you wanted to wait
18  until then. It might have some effect, I don't know.
19      MR. LISTON: I would like to defer until after the
20  Court's ruling on the other motion because it may have an
21  effect upon it.
22      THE COURT: All right. That's fair enough. So the
23  next motions, I guess, we'd be arguing, there's a motion
24  to suppress the various statements that were given. By my
25  count, there were statements on April 1st, which I assume
26  that the State would be offering into evidence depending
27  which case it went forward on, though there were no what I