Exhibit B

STATE OF CONNECTICUT *v.* AKOV ORTIZ
(AC 22770)

Schaller, Flynn and Peters, Js.

*Argued June 3—officially released September 23, 2003*

(Appeal from Superior Court, judicial district of
Middlesex, Clifford, J.)

*Moira L. Buckley*, assistant public defender, for the
appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, was *Timothy J. Liston*, state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Akov Ortiz, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault of a peace officer in violation of General Statutes § 53a-167c (a) (1), two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the court improperly instructed the jury (1) by including in its self-defense instructions an explanation as to the "duty to retreat" principle, (2) by including in its self-defense instructions an explanation as to the "initial aggressor" principle and (3) by failing to instruct fully on the charge of assault of a peace officer. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of the defendant's appeal. On the evening of August 10, 1999, the defendant was at the home of his friend, Joseph Roy, in Middletown, from 6 p.m. until approximately 12:45 a.m. on August 11, 1999. During the evening, the defendant contacted his former girlfriend, Kristen Quinn. Quinn then notified the police that the defendant had contacted her and that they planned to meet at the Wesley School at approximately 12:45 a.m.

Because the police had a warrant for the defendant's arrest, they planned to arrest the defendant when he attempted to meet Quinn at the Wesley School. Two detectives with the Middletown police department, Stephen Augeri and Jorge Yepes, initially were sent to the school at approximately 10:45 p.m. so that they could observe the area in preparation for the arrest. The detectives returned to the police station and briefed other officers on the area and their plan for the arrest. The plan consisted of using nine officers to apprehend the defendant by dispersing the officers at various points around the school, including a nearby footbridge, the roof of the school and the playground area. To take the defendant into custody, the officers planned to surprise him as he crossed the footbridge. Four officers, William Warner, Jeffrey Mefferd, Augeri and Yepes, were assigned to the footbridge location. Augeri and Warner were assigned to hide in the reeds at the right and left side of the bridge where the defendant was expected to cross into a field. The other officers were dispersed at various points around the school grounds to prevent the defendant's escape.

The officers were dressed in plain clothing, which consisted of dark blue raid jackets with yellow lettering.

They arrived at the Wesley School at approximately midnight on August 11, 1999. After parking their vehicles at a nearby restaurant, they walked to their assigned locations around the school. Augeri and Warner waited at the footbridge, as assigned, and practiced the plan to surprise the defendant by taking hold of both of his arms.

The defendant left Roy's home at approximately 12:45 a.m. As the defendant proceeded along a path toward the footbridge, one of the officers saw that the defendant was carrying a handgun. As the defendant approached the footbridge, he briefly hesitated before proceeding slowly across. Augeri and Warner announced themselves to the defendant as police officers and attempted to take hold of him. The defendant, however, managed to slip from their grasp. In the moments following, approximately five to seven gunshots were fired. The other officers in the area rushed to the scene and discovered that Warner had been shot in both arms and one leg, and that Augeri had suffered one gunshot wound to the right arm. The defendant also suffered one gunshot wound. Warner, Augeri and the defendant were then taken to a hospital and treated for their injuries.

The state filed a nine count amended information relating to the shootings of Augeri and Warner. The trial commenced on October 3, 2001. Although the defendant did not dispute that he had shot the officers, his claim at trial was self-defense. Specifically, his defense was that his actions were justified because he did not know at the time of the shootings that the individuals involved were police officers, he reasonably believed that they were about to use deadly force on him and deadly force was necessary to repel the attack. The evidence presented at the trial centered on visibility due to weather conditions, clothing worn by the officers, the plan to surprise the defendant and to take him into custody, and whether the police had announced themselves to the defendant as police officers.

The jury found the defendant guilty of one count of assault in the first degree in violation of § 53a-59 (a) (1), one count of assault of a peace officer in violation of § 53a-167c (a) (1), one count of carrying a pistol without a permit in violation of § 29-35 (a), and two counts of assault in the first degree in violation of § 53a-59 (a) (5). The court imposed a total effective sentence of thirty-six years incarceration. This appeal followed. Additional relevant facts will be provided as necessary.

Although the defendant's request to charge the jury included references to the "duty to retreat" and "initial aggressor" principles,[1] the defendant claims that the court improperly instructed on those principles.[2] The defendant concedes that he failed to preserve those claims by objecting to the court's instructions and now seeks review under *State* v. *Golding*, 213 Conn. 233,

239–40, 567 A.2d 823 (1989).[3] The defendant's third claim on appeal is unpreserved because the defendant failed to file a written request to charge and failed to except explicitly to the court's charge. See *State* v. *Davis*, 261 Conn. 553, 562, 804 A.2d 781 (2002). We will review each of the defendant's claims separately pursuant to *Golding*.[4]

We proceed to review the defendant's claims pursuant to *Golding* because the record is adequate for review, and "the right to establish a defense is constitutional in nature." *State* v. *Cruz*, 75 Conn. App. 500, 507, 816 A.2d 683, cert. granted on other grounds, 263 Conn. 921, 822 A.2d 243 (2003); see also *State* v. *Whipper*, 258 Conn. 229, 295 n.31, 780 A.2d 53 (2001). Furthermore, the claims are reviewable under *Golding* because the defendant asserts that there was no evidence presented during trial to support the court's instructions. See *State* v. *Ciccio*, 77 Conn. App. 368, 375, 823 A.2d 1233 (2003). "Our analysis of this claim is guided by the principle that [t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 625, 799 A.2d 1034 (2002).

"Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view [them] as improper." (Citation omitted; internal quotation marks omitted.) Id., 619–20.

I

The defendant first claims that the court improperly instructed the jury on the duty to retreat exception to the defense of self-defense. Specifically, the defendant asserts that the state presented no evidence from which the jury could find that he had a duty to retreat and no evidence that he in fact could have retreated. The defendant argues that the court's instructions misled the jury and deprived him of a fair trial because the instructions gave the jury an additional option with which it could reject his claim of self-defense. In support of his argument, the defendant relies on *State* v. *Whitford*, supra, 260 Conn. 610, *State* v. *Lemoine*, 256 Conn. 193, 770 A.2d 491 (2001), and *State* v. *Bellino*, 31 Conn. App. 385, 625 A.2d 1381 (1993), appeal dismissed,

228 Conn. 851, 635 A.2d 812 (1994).

The state, relying on *State* v. *Chapman*, 229 Conn. 529, 643 A.2d 1213 (1994) (en banc), argues that the court's instruction is not of constitutional magnitude and, therefore, that the defendant fails to satisfy the second prong of *Golding*. We review the defendant's claim pursuant to *Golding* because "the right to establish a defense is constitutional in nature." *State* v. *Cruz*, supra, 75 Conn. App. 507; see also *State* v. *Whipper*, supra, 258 Conn. 295 n.31.

We first point out that the defendant's reliance on *Lemoine* and *Bellino* is misplaced because those cases are factually inapposite. In those cases, the court failed to charge the jury on the duty to retreat because the court determined that the issue was not relevant. On appeal in those cases, the court's failure to charge the jury was determined to be proper. Conversely, in the present case, the court charged the jury on the duty to retreat, and the relevant inquiry is whether the court's charge misled the jury such that the defendant was deprived of a fair trial. Furthermore, *Whitford* fails to support the defendant's claim because we conclude that the evidence supported an instruction on the duty to retreat and, consequently, there is no reasonable possibility that the jury was misled in reaching its verdict.

In its charge to the jury, the court first instructed on the claim of self-defense and the reasonableness of the defendant's belief.[5] The court then gave the following instruction, on which the defendant rests his appellate challenge: "Now, I will explain the second circumstance under which a person is not justified in using deadly physical force. Under the second circumstance, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating. That means both that the retreat was completely safe and available and that the defendant knew it. 'Complete safety' means without any injury whatsoever to him. As I have said, self-defense requires you to focus on the person claiming self-defense, on what he reasonably believes under the circumstances, and it presents a question of fact as to whether a retreat with complete safety was available and whether the defendant knew it. The law stresses that self-defense cannot be retaliatory. It must be defensive and not punitive. So, you must ask yourself, did the defendant know that he could avoid the use of deadly physical force by retreating with complete safety? If so, and yet he chose to pursue to use deadly physical force, you shall reject the self-defense claim. If you find proven beyond a reasonable doubt that a retreat with complete safety was available and the defendant knew it, you shall then find that the state has proven beyond a reasonable doubt that the defendant was not justified in using

deadly physical force. Once again, the defendant does not have to prove that he acted in self-defense; rather, it's the state's burden to disprove that defense beyond a reasonable doubt."

On the basis of our review of the instructions as a whole, we cannot conclude that they were improper. The court instructed the jury on the state's burden to prove beyond a reasonable doubt all of the elements of the crimes charged. Furthermore, the court charged the jury that once the defendant raised the issue of self-defense, it was the state's burden to disprove the defense beyond a reasonable doubt.

The evidence supported the court's instruction to the jury. The jury heard testimony from Augeri and Warner regarding the events at issue. Augeri testified that he attempted to flee the scene when the defendant continued to fire his weapon and that Augeri feared for his life. In addition, Warner testified that he tried to run from the defendant, but that the defendant continued to fire his weapon, shooting Warner in the right leg. Warner testified that he then fired back at the defendant. Other officers testified that Augeri and Warner were approximately twenty feet away from each other, and that the defendant was about ten to fifteen feet away from Warner. On the basis of the testimony of Warner and Augeri, the jury reasonably could have concluded that the defendant had the ability to retreat with complete safety rather than continue to fire his weapon at the officers. The fact that the two officers were themselves attempting to flee from the defendant supports such a version of the evidence. The evidence, therefore, supported the jury instruction on the duty to retreat, and the instruction given was adapted to the issues and was sufficient to guide the jury. See *State* v. *Scarpiello*, 40 Conn. App. 189, 212, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996). Consequently, we conclude that there was no reasonable possibility that the jury was misled by the court's instruction on the duty to retreat and that the defendant has failed to satisfy the third prong of *Golding*.

II

Next, the defendant claims that the court improperly instructed the jury by including in its self-defense instructions an explanation as to the "initial aggressor" principle. The defendant relies on *State* v. *Beltran*, 246 Conn. 268, 276–77, 717 A.2d 168 (1998), to support his proposition that the charge to the jury was improper because it was unsupported by the evidence and that the initial aggressor principle was not an issue in the case. The defendant argues that this misled the jury because it provided another option for the jury to reject his claim of self-defense. We disagree.

We first point out that the defendant's reliance on *Beltran* is misplaced. *Beltran* concerned the omission

of an instruction. Id. In *Beltran,* the Supreme Court concluded that "the trial court's *failure to instruct* the jury on the initial aggressor doctrine was not improper." (Emphasis added.) Id., 276. *Beltran* is inapposite.

The defendant primarily rests his appellate challenge on the following isolated portion of the court's instruction concerning the initial aggressor principle: "Under the third circumstance, a person is not justified in using deadly physical force if he is the initial aggressor and does not withdraw from the encounter. The 'initial aggressor' is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person. The first person to use physical force is not necessarily the initial aggressor. Before an initial aggressor can use any physical force, the initial aggressor must withdraw or abandon in such a way that the fact of withdrawal is perceived by his opponent so that the opponent is aware that there's no longer any danger from the original aggression. If you find that the state has proven beyond a reasonable doubt that the defendant was the initial aggressor and that the defendant did not effectively withdraw from the encounter or abandon it in such a way that the other person knew he was no longer in any danger from the defendant, you shall then find that the defendant was not justified in using deadly physical force." The defendant also takes issue with the court's subsequent reference to the initial aggressor principle and the circumstances in which the defense would no longer be available.[6]

We note that the defendant does not claim that the instruction was incorrect as a matter of law, nor does he claim that the effect on the jury was to foreclose it from considering his claim of self-defense altogether. See *State* v. *Jimenez,* 228 Conn. 335, 341, 636 A.2d 782 (1994). The court's instruction left the jury free to weigh the evidence adduced at trial and to determine whether the defendant had presented a viable defense; see *State* v. *Whitford,* supra, 260 Conn. 624; and the state failed to satisfy its burden of proving beyond a reasonable doubt that he was not entitled to the defense. Id., 619. On the basis of our review of the instructions as a whole, we cannot conclude that there was a reasonable possibility that the jury was misled by the court's instructions.

The charge was sufficiently adapted to the issues in the case because the evidence supported the instruction as given by the court. Although there was testimony that the police officers were engaged in a surprise plan to take the defendant into custody, there also was testimony that they had announced themselves to the defendant, wore police raid jackets and had identification cards around their necks. The evidence supports a jury finding that the defendant, knowing that the police were attempting to take him into custody, was trying to avoid

capture and was the initial aggressor. Under those cir-
cumstances, the jury could reject the claim of self-
defense. On the basis of our review of the entire record
and the jury charge, we conclude that there was evi-
dence presented to support the court's instruction. The
defendant therefore has failed to satisfy the third prong
of *Golding* because the court's instruction was correct
in law and adapted to the issues, and it sufficiently
guided the jury.

### III

Finally, the defendant claims that the court improp-
erly instructed the jury by failing to instruct fully on
the charge of assault of a peace officer. Specifically,
the defendant argues that because the court failed to
limit the effect of General Statutes § 53a-23, failed to
explain the elements of assault of a peace officer and
failed to explain the relationship between § 53a-23 and
§ 53a-167c, the state was relieved of its burden of prov-
ing every element of the crime charged beyond a reason-
able doubt, thereby violating his due process rights.
The defendant also argues that after the court instructed
on § 53a-23, it failed to remind the jurors that they had
to determine whether the officers were identifiable to
the defendant, whether the officers were acting within
the scope of their duties and whether the defendant
had the requisite intent to prevent them from per-
forming their duties.

The state argues that the court's instructions were
not improper because the court specifically instructed
the jurors that to find the defendant guilty of having
violated § 53a-167c, they needed to find that he had the
specific intent to prevent the officer from performing
his lawful duties. The state further argues that no evi-
dence was presented at trial that the officers were act-
ing unlawfully or that they were present at the school
that night for any purpose other than to arrest the defen-
dant. Furthermore, the state argues that § 53a-23 was
intended to be a limitation on the possible defenses to
criminal liability, rather than, as the defendant suggests,
a limitation on the defendant's criminal liability.

The following facts are relevant to the defendant's
claim. The defendant was charged with two counts of
assault of a peace officer in violation of § 53a-167c (a)
(1).[7] One of those counts related to the assault of War-
ner, and the other count related to the assault of Augeri.

The court instructed the jury in relevant part as fol-
lows: "Now, for you to find the defendant guilty of
[assault of a peace officer], the state must prove the
following elements beyond a reasonable doubt: One,
that the victim of the assault was a reasonably identifi-
able peace officer; two, that the conduct of the defen-
dant occurred while the peace officer was acting in the
performance of his duties; three, that the defendant had
the specific intent to prevent the peace officer from

performing his lawful duties; and, four, that the defendant caused physical injury to the peace officer. . . . The phrase 'in the performance of his official duties' means that the police officer is acting within the scope of what he's employed to do as opposed to engaging in a personal frolic of his own. The officer must be acting under a good faith belief that he's carrying out his duty and his actions are reasonably designed to that end. . . . If the state has proven these elements beyond a reasonable doubt, then your verdict would be guilty. If they have not proven all of these elements beyond a reasonable doubt, your verdict would be not guilty. There are no lesser included offenses to these two counts. I also want to instruct you on a statute, it's § 53a-23, not that the section means anything. But it reads as follows: 'A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal.' The purpose of the statute is to enforce orderly behavior in the important mission of preserving the peace and to require nonviolent compliance with a police officer's decision, right or wrong, to arrest, thus avoiding the dangers of violence to the police and to the arrested person."

In analyzing the defendant's claim, we must look to § 53a-23, which provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal." Although that section is an "abrogation of the common-law privilege to resist arrest [it] is limited, however, to illegal *arrests*, per se, and has not been applied to other illegal police conduct." (Emphasis in original.) *State* v. *Davis*, supra, 261 Conn. 567. "[U]nder § 53a-23, the illegality of an arrest is not a defense to charges under . . . § 53a-167c." Id. "Thus, § 53a-23 was intended to require an arrestee to submit to an *arrest*, even though he believes, and may ultimately establish, that the arrest was without probable cause or was otherwise unlawful. It was not intended to require an arrestee to submit to egregiously unlawful conduct—such as an unprovoked assault—by the police in the course of an arrest, whether the arrest was legal or illegal." (Emphasis in original.) Id., 568.

In evaluating the court's charge to the jury in its entirety, we conclude that the instructions were proper and were sufficient to guide the jury in reaching its verdict. The defendant was charged with assault of a peace officer in violation of § 53a-167c. The court instructed the jury on each of the elements of the charge of assault of a peace officer. The court instructed the jury that the state had to prove each of the elements beyond a reasonable doubt and that to convict the defendant, it had to find that he had the specific intent to prevent the officer from performing his lawful duties. The court also instructed the jury on the meaning of the phrase, "in the performance of his official duties."

We presume that the jury followed the court's instructions. See *State* v. *Jimenez*, 74 Conn. App. 195, 214, 810 A.2d 848 (2002), cert. denied, 262 Conn. 947, 815 A.2d 677 (2003).

In addition, there was no evidence that the conduct of the police officers was excessive or unlawful, and it was undisputed that they were at the school to execute a lawful arrest warrant. See, e.g., *State* v. *Davis*, supra, 261 Conn. 569–72 (jury not adequately instructed on meaning of phrase "performance of their duties" or that use of unwarranted or excessive force is not within performance of duties). Furthermore, the defendant's theory of defense centered on the claim that he was justified in his actions because he did not know that the men were police officers, he reasonably believed that they were about to use deadly force on him and reasonably believed that deadly force was necessary to repel the attack. The court properly instructed the jury on that defense and that it was the state's burden to disprove the defense. We conclude that the jury was not misled by the court's instruction and that the defendant has failed to satisfy the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant requested the following jury charge in relevant part: "You must find the defendant not guilty on the grounds of justification unless you find that the state has proven to you, beyond a reasonable doubt, any one of the following elements: First, that the defendant did not believe that he was in imminent danger of injury to [himself or another] and that the use of force was not necessary to protect [himself or another]; or, that the defendant did not have reasonable grounds for that kind of a belief; or, that the force he used was unreasonable; or, *that he was the initial aggressor and did not attempt to withdraw.* If the state has proven any one or more of those elements beyond a reasonable doubt, then the defendant was not justified. Otherwise, he was justified. . . . The law does not encourage the use of deadly force and, in most circumstances, *a person must retreat from a perceived harm if he is capable of doing so with complete safety.* . . . A person is not justified in using physical force when, with the intent to cause physical injury to another person, he provokes the use of physical force by that person. However, *if the defendant was the initial aggressor, his use of physical force upon another is justifiable under such circumstances if he withdraws from the encounter and effectively communicates to the other person his intent to withdraw* . . . ." (Emphasis added.)

[2] The court's full instructions to the jury on self-defense were as follows: "Bearing in mind the instructions I've given to you regarding justification, the state has the burden to prove beyond a reasonable doubt under the first circumstance: One, the defendant did not, in fact, believe that he was in imminent danger of death or great bodily harm; or, two, the defendant did not have a reasonable basis for his belief; or, three, the defendant did not, in fact, believe that he needed to use deadly physical force to repel the other person's attack; or, four, the defendant did not have a reasonable basis for his belief that he needed to use deadly physical force to repel the other person's alleged attack.

"Or, under the second circumstance, a retreat with complete safety was available to the defendant, and the defendant knew a retreat with complete safety was available to him.

"Or, under the third circumstance, the defendant was the initial aggressor, and the defendant did not effectively withdraw from the encounter or effectively abandon it."

The defendant specifically takes issue with the charges given by the court regarding the second and third circumstances.

[3] In its brief, the state argues that *Golding* is not applicable to the defendant's first and second claims because *Golding* should not be allowed to

apply to claims of induced error. See *State* v. *Cruz*, 75 Conn. App. 500, 506 n.8, 816 A.2d 683, cert. granted on other grounds, 263 Conn. 921, 822 A.2d 243 (2003). We conclude that this claim is without merit.

[4] "In *Golding*, this court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 489–90, 820 A.2d 1024 (2003). "The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 240.

[5] The court's charge to the jury on self-defense was in relevant part as follows: "Now, I want to instruct you on self-defense. Justification is the legal term for self-defense. . . . Self-defense is a means by which the law justifies the use of force that would otherwise be illegal. Once self-defense is raised, the state must disprove the defense beyond a reasonable doubt. And one of the claims here is that the defendant acted in self-defense. In claiming that he acted in self-defense, the defendant is claiming that his use of deadly physical force was justified. . . . Although the defendant raised a defense of justification, the state has the burden to prove beyond a reasonable doubt that the defendant was not justified in using deadly physical force. . . . There are three circumstances relevant to this case under which a person is not justified in using deadly physical force. . . . Under the first circumstance, a person is not justified in using deadly physical force when, at the time he uses deadly physical force . . . he does not reasonably believe that the other person or persons are about to use deadly physical force against him or about to inflict great bodily harm to him. . . . In deciding whether the state has proven beyond a reasonable doubt that the defendant was not justified in using deadly physical force, you'll first focus on the defendant. You first focus on what he, in fact, believed at the time he used deadly physical force. Then you will focus on whether the defendant's belief was reasonable under all the circumstances that existed when he used deadly physical force."

[6] See footnote 2. "Bearing in mind the instructions I've given to you regarding justification, the State has the burden to prove beyond a reasonable doubt . . . [that] [t]he defendant was the initial aggressor, and the defendant did not effectively withdraw from the encounter or effectively abandon it."

[7] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault . . . when, with intent to prevent a reasonably identifiable peace officer . . . and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATION

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 26th day of January 2005, to the following:

Andrew M. Dewey, Esq.
Law Offices of Baio & Associates, P.C.
15 Elm Street
Rocky Hill, CT  06067

Trina A. Solecki, Esq.
City Attorney
245 DeKoven Drive
P.O. Box 1300
Middletown, CT  06457

_____
Stephen J. Lable